UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
DENNIS MAPP,

                    Petitioner,

    - against -

WILLIAM PHILLIP, Superintendent,
Green Haven Correctional Facility,

                Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

FOR ONLINE PUBLICATION ONLY

MEMORANDUM
AND ORDER
04-CV-1889 (JG)

A P P E A R A N C E S:

    DENNIS MAPP
        No. 01A4207
        Sing Sing Correctional Facility
        354 Hunter Street
        Ossining, NY 10562-5442
        Petitioner *Pro Se*

    RICHARD A. BROWN
        District Attorney
        Queens County
        125-01 Queens Boulevard
        Kew Gardens, NY 11415
    By:    Michael Tarbutton
        Assistant District Attorney
        Attorneys for Respondent

JOHN GLEESON, United States District Judge:

        Dennis Mapp petitions for a writ of habeas corpus, challenging his conviction in state court. I held oral argument on June 10, 2005. For the reasons set forth below, the petition is denied.

BACKGROUND

On September 9, 1998, in an apartment building in Queens, Mapp shot Willie Clerk, a rival drug dealer. Clerk died as a result of the shooting. The next day, Mapp fled to Washington D.C.

During the ensuing police investigation into the shooting, Mapp learned that he was being sought for questioning. In about February 1999, Mapp met with an attorney, William Simms, in Brooklyn. After the meeting, Simms telephoned the police to find out the status of the investigation. Simms was told that the police wanted Mapp to come in for questioning, and Simms related this information to Mapp.

Mapp did not go to the police: "I wasn't ready to turn myself in because I didn't have the right state of mind to turn myself in yet." (June 5, 2001 Tr. 27-28.) On March 10, 2000, in Baltimore, Maryland, Mapp was arrested by Baltimore police officers pursuant to a Maryland warrant on unrelated charges. At the Baltimore precinct, Mapp was questioned by two New York City police detectives, who had participated in the arrest. After Mapp signed a *Miranda* waiver form, the detectives questioned Mapp concerning Clerk's murder. Mapp implicated himself in the shooting: "I was only working the Towers[1] for one week when [Clerk] got out of jail and I didn't know he was working the building, selling drugs. So when the person ran up on me I pulled out my 9mm from my waist and [Clerk] grabbed me from the back on the fifth floor stairway landing and he was tussling and the gun went off." (March 19, 2001 Tr. 10.)

On April 17, 2000, Mapp was arrested for the murder of Clerk. He was charged with two counts of murder in the second degree, and criminal possession of a weapon in the

---

[1] The reference to "the Towers" was to the American Towers, an apartment building in Queens.

second and third degrees.

On March 19, 2001, a *Huntley* hearing was held to determine whether the inculpatory statement Mapp made in Baltimore should be suppressed. Mapp argued that the police knew that he was represented (by Simms) prior to eliciting his statement, and that his right to counsel had therefore been violated. The court denied the motion to suppress.

On June 5, 2001, the court re-opened the motion to suppress for further testimony on the question whether Mapp was represented by Simms at the time he gave his inculpatory statement. On June 7, 2001, the motion to suppress was again denied.

Later that day, Mapp pleaded guilty to manslaughter in the first degree pursuant to an agreement that he would receive an 18-year term of imprisonment. Prior to Mapp's plea, the trial court stated:

> Okay, Mr. Mapp, your attorney has indicated that you're willing to take a plea in this case and take it to a manslaughter in the first degree, with a promise from me that you will be sentenced to 18 years in prison, which you have to do 85 percent of that. I did some quick arithmetic before. I think it comes down to 13 and three quarters, minus the amount of time you already have in.
>
> In order to get this most favorable plea – and it is, because you face up to 25 to life – you're going to have to waive everything that's been done so far, including hearings and decisions on the hearings, et cetera.

(June 7, 2001, Tr. at 2-3.) After Mapp admitted his guilt during the plea proceedings – "I had a gun, and I shot him, and I intended to hurt him, not kill him." (June 7, 2001 Tr. 7) – the following colloquy took place:

> The Court: Mr. Mapp, I've just been handed a form entitled "Waiver of Right to Appeal." Have you signed this form voluntarily and knowingly after being fully

| | |
|---|---|
| | apprised of your appellate rights by both myself and your attorney standing besides you? |
| Mapp: | Yes. |
| The Court: | Have you had a full opportunity to discuss these matters with your attorney? |
| Mapp: | Yes. |
| The Court: | Do you have any questions you wish to ask Mr. Foley or myself at this time? Now is the time to ask. Go ahead. |
| Mapp: | I just want to say - - |
| The Court: | Let me go over this form with you again so you fully understand. You're waiving your right to appeal both the plea – that's what you're doing at this time. The sentence will be in two to three weeks, something like that.<br>You're also waiving all pre-trial suppression issues, including suppression of statements and identification, as well as plea and sentence issues.<br>. . . |
| Mr. Foley [defense counsel]: | As you indicated on the record, indicating the waiver of his right to appeal with respect to suppression. I spoke to Mr. Mapp previously. I indicated to him your decision, with respect to your decision, it was based in large part on credibility of witnesses. |
| The Court: | Exactly. |
| Mr. Foley: | And based on that, the statement was going to be found admissible and was not going to be suppressed. |
| The Court: | That is correct. |

(June 7, 2001 Tr. 9-10.)

On July 11, 2001, Mapp was sentenced to an 18-year term of imprisonment. Neither during the plea proceeding nor at sentencing did the trial court inform Mapp that his sentence would include a five-year period of post-release supervision. The trial court also did not

4

correct its erroneous calculation that 85 percent of an 18-year sentence was 13 ³/₄ years. (It is around 15 ¹/₃ years.²)

Mapp, through counsel, appealed to the Appellate Division, Second Department. Appellate counsel argued that Mapp's inculpatory statement should have been suppressed because his right to counsel had indelibly attached when Simms phoned the police on Mapp's behalf. Appellate counsel argued that Mapp's waiver of his right to appeal the adverse was invalid because the plea itself was invalid. Counsel asserted that the trial court's failure to inform Mapp about the five-year period of post-release supervision vitiated the plea.³ Counsel explained, however, that Mapp sought vacatur of his guilty plea only if the Appellate Division agreed that his incriminating statement should be suppressed: "if the Court determines that it cannot reach the merits of his suppression argument or, after reaching the merits, rejects [Mapp's] right to counsel claim, he requests that his conviction be affirmed." (Appellant Br. at 25 n11.)

In a supplemental brief filed *pro se*, Mapp argued that: (1) he had invoked his right to counsel prior to being questioned by the police; (2) the New York arrest warrant was invalid because it was based on the unlawfully-elicited statement; (3) the court's rulings on objections made by counsel during the suppression hearings were biased in favor of the State; (4) the right to counsel could not be waived, and thus Mapp's right to appeal the suppression hearing

---

² Under New York Correction Law § 803(1)(c), an inmate serving a determinate sentence of imprisonment may receive a good behavior allowance of up to one-seventh (approximately 15%) of his sentence. *See* N.Y. Correct. Law § 803(1)(c).

³ In a footnote, appellate counsel stated that, in addition to misleading Mapp concerning post-release supervision, the trial court also misled Mapp by erroneously calculating 85 percent of an 18-year term to be 13 ³/₄ years instead of "more than 15 years." Appellant Br. at 23 n.10.

could not be waived; (5) the New York police should have obtained an arrest warrant prior to questioning him in Baltimore, which would have secured his right to counsel; (6) the New York police committed a *Payton* violation by "unilaterally" entering his house in Baltimore without a warrant, and thus his subsequent inculpatory statement should have been suppressed; (7) Mapp received ineffective assistance of counsel because counsel failed to assert (a) additional arguments as to why Mapp's right to counsel had attached prior to questioning; and (b) that the New York arrest warrant was invalid. Finally, Mapp reiterated that if the Appellate Division failed to find error in the denial of the motion to suppress, it should affirm his conviction despite the invalidity of his plea. Pet'r's Supp. Br. at 6 ("the defendant is under the belief that the conviction should be affirmed if the plea is vacated and the suppression is not.").

The Appellate Division affirmed Mapp's conviction on September 8, 2003. *People v. Mapp*, 764 N.Y.S.2d 195 (2d Dep't 2003). The court held that:

> Since the defendant neither moved to withdraw his plea of guilty nor moved to vacate his judgment of conviction, his contention that his plea of guilty was not knowing, intelligent, and voluntary because he was not informed that he would be subject to a mandatory period of post-release supervision is not preserved for appellate review and we decline to review it in the exercise of our interest of justice jurisdiction.

*Id.* (citations omitted). The Appellate Division stated that Mapp's other claims, including those raised in Mapp's supplemental *pro se* brief, "either are unpreserved for appellate review or without merit." *Id.* The Court of Appeals denied Mapp's application for leave to appeal on December 12, 2003. *People v. Mapp*, 775 N.Y.2d 792 (2003) (Read, J.).

On April 20, 2004, Mapp filed a *pro se* petition for a writ of habeas corpus in this Court, claiming that (1) his inculpatory statement was elicited after his right to counsel had

6

attached; (2) he invoked his right to counsel prior to being questioned, and thus his inculpatory statement should have been suppressed due to a *Miranda* violation; and (3) his warrantless arrest at his residence in Baltimore constituted a *Payton* violation, and thus his subsequent incriminatory statement should have been excluded as a fruit of the unlawful arrest.

DISCUSSION

A.    The Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") has narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. *See* 28 U.S.C. § 2254(d). Under the AEDPA standard, which applies to habeas petitions filed after AEDPA's enactment in 1996, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[4] The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the

---

[4] A reviewing court may also grant relief where the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). This basis for relief is not at issue here.

7

Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

Under AEDPA's deferential standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist*, 260 F.3d at 93 (quoting *Williams*, 529 U.S. at 411); *see also Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (per curiam) ("Where . . . the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but objectively unreasonable."). Interpreting *Williams*, however, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether it has alluded to federal law in its decision. As the Second Circuit stated in *Sellan v. Kuhlman*:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when

8

> it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

261 F.3d 303, 312 (2d Cir. 2001). "However, if a federal claim has not been adjudicated on the merits, AEDPA deference is not required." *DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005) (citing *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003) ("Where it is impossible to discern the Appellate Division's conclusion on the relevant issue, a federal court should not give AEDPA deference to the state appellate court's ruling.") (internal quotation and brackets omitted)).

B. Mapp's Claims

1. Waiver of the Right to Appeal

In his habeas petition, Mapp argues that the inculpatory statement he made to the police while in the Baltimore precinct should have been suppressed because (1) his right to counsel had attached, primarily because Mapp had contact with a lawyer prior to being questioned by the police in Baltimore; (2) he invoked his right to counsel before the police elicited his confession, violating his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966); and (3) the confession was made following a *Payton* violation, and thus was a fruit of the unlawful arrest. I do not reach the merits of these claims. Mapp waived his right to appeal the adverse suppression ruling as part of his guilty plea in state court. Having done so, Mapp is not entitled to collaterally challenge that ruling in federal court.

Generally, a petitioner who pleads guilty may not challenge his conviction on the basis that his constitutional rights were violated during a pre-plea hearing. *See Tollett v.*

9

*Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."); *cf. Lefkowitz v. Newsome*, 420 U.S. 283, 289 (1975) ("Once the defendant chooses to bypass the orderly procedure for litigating his constitutional claims in order to take the benefits, if any, of a plea of guilty, the State acquires a legitimate expectation of finality in the conviction thereby obtained.").

An exception is made where the applicable state law permits a defendant who has pleaded guilty to appeal specified constitutional issues. *See Lefkowitz*, 420 U.S. at 290, 293 (1975) (where state law permits an appeal, a plea is entered with the clear understanding and expectation by the State that the plea will not foreclose judicial review of the alleged constitutional violations). Under New York law, such an appeal is permitted in connection with an adverse suppression ruling. *See id.*; N.Y. Criminal Procedure Law 710.70.[5] This statutory right to appeal, however, can be waived. *See Smoot v. McGinnis*, 2001 WL 1328593, at *4 (E.D.N.Y. Sep. 20, 2001) (citing *People v. Seaberg*, 74 N.Y.2d 1, 10 (1989) (waivers of right to appeal advance State's legitimate interest in finality and in holding defendants to bargains they have made)); *People v. Vallejo*, 690 N.Y.S.2d 374 (4th Dep't 1999) (upholding waiver of right to appeal suppression ruling). Waiver of the right to appeal an adverse suppression ruling in state court also waives the opportunity for federal habeas review of that ruling. *See Smoot*, 2001 WL

---

[5] N.Y. Crim. Proc. Law § 710.70(2) states: "An order finally denying a motion to suppress evidence may be reviewed upon an appeal from an ensuing judgment of conviction notwithstanding the fact that such judgment is entered upon a plea of guilty."

10

1328593 at *4-5 (defendant may not collaterally attack constitutionality of suppression ruling in federal court where he has waived right to appeal in state court).

Here, Mapp pleaded guilty and waived his right to appeal the suppression ruling. The trial court specifically explained that the waiver included "all pre-trial suppression issues." (June 7, 200l Tr. 9.) Having waived this right, Mapp may not now collaterally challenge his conviction based on the adverse suppression ruling. *See Smoot*, 2001 WL 1328593, at *5. Accordingly, Mapp's claim that his inculpatory statement should be suppressed because of violations of federal law is denied.

2. The Validity of Mapp's Guilty Plea

At oral argument of this petition, Mapp asserted that he was entitled to habeas relief because the trial court misinformed him about the length of time he would have to serve in prison. The trial court stated that Mapp would have to serve around 13 $^3/_4$ years, whereas, assuming good behavior, Mapp will have to serve over 15 years of his 18-year sentence. Further, Mapp asserted that he was improperly pressured into accepting the plea by his defense attorney.[6] Mapp reiterated, however, that he seeks a new trial only if his inculpatory statements are ordered suppressed by this Court. *See* June 10, 2005 Tr. 7-8; 12.

For a plea to be constitutionally valid, it must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In order to determine whether a plea made in state

---

[6] At oral argument, Mapp stated: "At the time after my [suppression motion] was denied, at that same time . . . I didn't have five minutes to make a decision. Either [defense counsel] said I take the plea which is 18 years or I go to trial and get 25 to life. My lawyer . . . said listen, all the evidence is stacked against you, you're not going to win, you're going to spend the rest of your life in jail. At the time I didn't really know what to do. Now as I go on and I learn the law and I study the law, now I see it was a bad decision." June 10, 2005 Tr. at 5-6.

11

court was voluntary where the defendant has been given sentencing misinformation, the court must consider "whether the defendant was aware of actual sentencing possibilities, and, if not, whether accurate information would have made any difference in his decision to enter a plea." *Williams v. Smith*, 591 F.2d 169, 172 (2d Cir. 1979).

Assuming that Mapp was unaware of the "actual sentencing possibilities," that is, that he would have to serve over 15 years of the 18-year sentence, Mapp's unwillingness to part with his current plea agreement unless his inculpatory statement is suppressed suggests that "accurate information" would not have affected Mapp's decision to enter a plea. Indeed, Mapp has made it clear, both in his direct appeal and at oral argument on this petition, that he does *not* seek to have his plea revoked if his inculpatory statement is not suppressed. *See* Appellant Br. at 25 n.11 ("Appellant does not seek vacatur of his guilty plea independent of his argument that his statement should be suppressed"); Supplemental *pro se* Br. at 6 ("[d]efendant is under the belief that the conviction should be affirmed if the plea is vacated and the suppression is not."). At oral argument on this petition, Mapp reiterated that he did not want to face the prospect of a new trial unless the inculpatory statement was suppressed:

> The Court: . . . if your plea was not knowing and voluntary, then your relief from that is not to get you statement suppressed, your relief would be, well, go back and get your plea back and then you're facing the prospect of 25 to life. . . . Now you don't sound to me like the sort of . . . person who wants to go back and face 25 to life.
> Mr. Mapp: Not at all Your Honor.
> The Court: You want to go back and get your statement suppressed?
> Mr. Mapp: Yes.
> . . . .

|              |                                                                 |
|--------------|-----------------------------------------------------------------|
| Mr. Mapp:    | Can you take into consideration about the time that the judge told me that I would be doing 13 and three quarter years and I'm actually doing 15 and three quarter years. . . . |
| The Court:   | Okay, I will consider that. One thing I'm a little hung up on is the disconnect between that complaint and the relief you want because you've told me you don't want to go back -- |
| Mr. Mapp:    | No, sir. |
| The Court:   | -- and have the plea unraveled; you want to go back for the case to get dismissed because of the suppression of your statement, right? |
| Mr. Mapp:    | Yes, sir. |

June 10, 2005 Tr. 7-8, 12.

Mapp's statements that he prefers an 18-year sentence (even if means he serves over 15 years) rather than face a trial where his confession is admissible suggests that Mapp would have pleaded guilty even had the trial court correctly informed Mapp of the time he would likely have to serve.[7]

I need not determine, however, whether Mapp's plea was voluntary and intelligent, or whether Mapp's defense attorney improperly pressured him into accepting the plea bargain. Even if Mapp were to be successful on these claims, it would entitle him to relief that

---

[7] Other factors that a court considers when determining the voluntariness of a guilty plea where a defendant is given sentencing misinformation is the strength of the state's case, *see Williams*, 591 F.2d at 172-73, and the disparity between what a defendant was told his sentence exposure would be and the actual sentence given. *Cf. United States v. Gordon*, 156 F.3d 376, 380-81 (2d Cir. 1998) (in the context of a defendant being advised *not* to take a plea, gross underestimation of defendant's sentencing exposure by counsel (120 months instead of 262-327 months) was objective evidence that defendant would have accepted plea had he been given accurate information). Neither of these factors suggest that Mapp would not have pleaded guilty if he had been told that he would have to serve over 15 years. While the record is incomplete as to the strength of the other evidence against Mapp (that is, in addition to his admissible confession), it included eyewitness testimony. According to the District Attorney, a witness told the police that Clerk was killed by a man named "Buck." A detective recognized "Buck" as a nickname used by Mapp, and the witness identified Mapp from a photo array. Opp'n Br. at 3.

13

he does not want: withdrawal of the plea and a new trial. That relief would have no affect on the admissibility of Mapp's inculpatory statement. Mapp has repeatedly stated that he does not want to face the prospect of a new trial – where he would face a potential sentence of 25 years to life if convicted – if his inculpatory statement is admissible. Because the relief that Mapp seeks – vacatur of his guilty plea *and* suppression of his inculpatory statement – is not available, his petition for habeas relief grounded in the voluntariness of his plea is denied.

Moreover, Mapp's challenge to the voluntariness of his plea is procedurally defaulted. The Appellate Division held that Mapp's claim was not preserved for appellate review because he never sought to withdraw his plea of guilty. *See Rosenfeld v. Dunham*, 820 F.2d 52, 54 (1987) ("When a state appellate court refuses to consider the merits of a petitioner's claims on account of his procedural failure to preserve his rights by objection at the time, then a federal court may not review those merits in a collateral habeas corpus proceeding, unless petitioner demonstrates both good cause for and actual prejudice resulting from his procedural noncompliance."). Though Mapp has explained the reason for his default – i.e., he does not want his plea back; he wants his statements suppressed – that reason does not constitute "cause" for his procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 753 ("the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule, [f]or example, a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable.") (internal quotations and ellipses omitted).

## CONCLUSION

For the foregoing reasons, the petition is denied. Because Mapp has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue.

So Ordered.

John Gleeson, U.S.D.J.

Dated: June 29, 2005
      Brooklyn, New York